UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ROBERT D. GORDON, Receiver of Legisi
Marketing, Inc., et al.,

    Plaintiff,

v.

MARY K. KOEHN,

    Defendant.

Hon.

Case No. 12-

_____/

## COMPLAINT

Robert D. Gordon ("Gordon"), in his capacity as Receiver for the Estates of Legisi Marketing, Inc., *et al.*, through his attorneys, Clark Hill PLC, states the following as his Complaint against Defendant, Mary K. Koehn ("Defendant"):

### PARTIES AND JURISDICTION

1. On May 5, 2008, the Court in the case of *United States Securities and Exchange Commission v. McKnight, et al.,* United States District Court, Eastern District of Michigan, Case No. 08-11887 (the "SEC Enforcement Action") entered its Order Appointing Receiver (the "Receivership Order"), appointing Gordon as the Receiver of the receivership estates of Gregory McKnight, Legisi Marketing, Inc., and Legisi Holdings, L.L.C. (collectively referred to as the "Receivership Estate".

2. Gordon is authorized to bring this action pursuant to 28 U.S.C. §§ 754 and 1692, Fed. R. Civ. P. 66, and the Receivership Order.

1

3. Gregory N. McKnight ("McKnight") is a resident of Swartz Creek, Michigan.

4. Legisi Holdings, LLC ("Legisi Holdings") is a Nevis, West Indies limited liability company that McKnight formed in February 2006, and that had its principal place of business in Swartz Creek, Michigan from its inception until the appointment of Gordon as its Receiver. The now-defunct Legisi website represented that the Legisi Program (described below) was a wholly-owned subsidiary of Legisi Holdings. Legisi Holdings had no apparent business other than to serve as the entity through which McKnight conducted the offering of the Legisi Program investment contracts.

5. Legisi Marketing, Inc. ("Legisi") is a Michigan corporation. From its inception until the appointment of Gordon as its Receiver, Legisi had its principal place of business in Flint, Michigan. Beginning in January 2007, McKnight deposited millions of dollars of Legisi investor funds in bank and brokerage accounts held in the name of Legisi Marketing. McKnight used the funds in these accounts to (among other things) make distributions to Legisi investors, to pay marketing and administrative fees, to trade in securities and commodities, and to purchase real estate.

6. At all relevant times, McKnight owned and controlled Legisi.

7. Upon information and belief, Defendant is an individual residing in Aloha, Oregon.

8. The vast majority of investors in Legisi have to date been unable to recover some or all of their principal investments in Legisi. However, Defendant is one of several Legisi

2

investors who received or withdrew funds from Legisi in excess of their principal investments (the "Net Gains").

9. The Net Gains received or withdrawn by Defendant were not profits generated by Legisi from legitimate business activities. Instead, such funds were contributed by other Legisi investors who lost all or a portion of their investment in Legisi. Pursuant to his authority as identified in paragraph 2 above and other applicable law relating to Ponzi schemes, Gordon hereby seeks to recover the illegal distribution(s) or transfer(s) of the Net Gains made to and received by Defendant, in order to equitably redistribute those funds among Legisi victims.

10. The Court has subject matter jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1367, as such claims are so related to the SEC Enforcement Action as to form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 754 and 1391(b).

### COMMON ALLEGATIONS

12. Pursuant to the Legisi Program, McKnight, on behalf of Legisi Holdings and Legisi, raised money based on claims that he would invest the offering proceeds and then pay the investors each month from profits from the investments. McKnight represented that his investing activities generated monthly profits ranging from 15% to 18%, and McKnight promised to pay his investors returns of as much as 15% each month.

13. In fact, McKnight and the Legisi entities were operating a giant Ponzi scheme.

14. At no time was there a valid registration statement filed or in effect with the United States Securities and Exchange Commission (the "SEC") in connection with McKnight and Legisi's offer and sale of Legisi Program investment contracts. McKnight was not a registered representative or registered investment advisor.

15. McKnight and Legisi asserted on the Legisi Website that the Legisi Program was a "loan program" through which investors would "loan" money to Legisi and, in return, Legisi would pay investors high rates of interest. However, it was obvious from reviewing the Legisi Website that the Legisi Program was a classic pooled investment vehicle in which investors invested money in a common venture with the expectation that the money would be used to generate profits for McKnight, Legisi, and the investors solely through the efforts of McKnight and Legisi.

16. The Legisi Website offered investments with guaranteed returns ranging from 0.25% per day to 15% per month to be paid from profits generated by McKnight and Legisi's investments.

17. The returns offered on the Legisi Website were patently untenable, and no reasonable person would believe that such returns could be legitimately achieved on a sustained basis necessary to support the Legisi Program.

18. Contrary to representations that Legisi was able to, and in fact did, make profits in excess of the returns promised to its investors, Legisi was not profitable and was an insolvent Ponzi scheme from its inception, in that earlier investors' returns were generated by the influx of fresh capital from unwitting newcomers rather than through legitimate investment activity.

19.  This Court has held, in a related case, *Gordon v. Mazu Publishing, Inc., et al.,* Case No. 09-13953, that Legisi was a Ponzi scheme.

20.  Thousands of investors from around the world invested in the Legisi program. The majority of those investors suffered net losses.

21.  Pursuant to the Receivership Order, Gordon is tasked with, *inter alia,* marshaling and liquidating the assets of the Receivership Estate for the benefit of the Receivership Estate and Legisi victims. While these efforts are well underway, the Receivership Estate assets will not be sufficient to reimburse all investors for their losses. Consequently, Gordon must use his authority to pursue recovery from investors, including Defendant, who received Net Gains.

22.  At various times during 2006 and 2007, Defendant deposited investments with Legisi in the total sum of $45,251.54.

23.  At various times during 2007, Defendant received distributions or transfers from Legisi in the total sum of $76,938.29.

24.  Net of Defendant's deposits, Defendant received one or more distributions or transfers of Net Gains from Legisi in the aggregate amount of $31,686.75 (each a "Transfer" and collectively the "Transfers").

25.  A summary of the dates and amounts of the Transfers is attached hereto as <u>Exhibit 1</u>.

26.  Defendant was the initial transferee or the subsequent transferee of the Transfers, or the person for whose benefit the Transfers were made.

27. On September 23, 2011 (the "Demand Date"), the Receiver served Defendant with a written demand for return of the Transfers. To date, Defendant has failed to return the Transfers to the Receiver.

### COUNT I – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO MICHIGAN UNIFORM FRAUDULENT TRANSFER ACT, M.C.L. § 566.35(1)

28. Gordon incorporates the allegations of all of the foregoing paragraphs as if fully set forth herein.

29. Legisi was insolvent when each Transfer was made or became insolvent as a result of each of the Transfers.

30. Legisi had investors and creditors at the time each Transfer was made.

31. Legisi did not receive reasonably equivalent value for any of the Transfers.

32. The Transfers were fraudulent as to Legisi investors and/or creditors.

33. As a direct and proximate result of the Transfers, the Receivership Estate has suffered damages, in the amount of $31,686.75, plus interest and costs.

### COUNT II – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO MICHIGAN UNIFORM FRAUDULENT TRANSFER ACT, M.C.L. § 566.34(1)

34. Gordon incorporates the allegations of all of the foregoing paragraphs as if fully set forth herein.

35. Legisi, through McKnight, made the Transfers with actual intent to hinder, delay, or defraud its creditors and/or investors based upon, without limitation, McKnight's knowledge

that Legisi did not have legitimate profits or revenues from which to make the promised monthly returns on investments to its investors and the fact that Legisi was insolvent at the time of each of the Transfers and/or was rendered insolvent by each of the Transfers.

36. Legisi did not receive reasonably equivalent value in exchange for the Transfers.

37. Legisi (i) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

38. The Transfers were fraudulent as to Legisi investors and/or creditors.

39. As a direct and proximate result of the Transfers, the Receivership Estate has suffered damages, in the amount of $31,686.75, plus interest and costs.

## COUNT III - UNJUST ENRICHMENT

40. Gordon incorporates the allegations of all of the foregoing paragraphs as if fully set forth herein.

41. Defendant received the Transfers from an illegitimate investment scheme.

42. Unlike the majority of investors in Legisi, Defendant received fictitious profits in the form of the Net Gains.

43. Defendant's receipt and retention of the Net Gains unjustly enriches Defendant at the expense, and to the detriment, of the vast ranks of Legisi investors who have lost some or all of their principal investments.

44. As a direct and proximate result of Defendant's unjust enrichment, the Receivership Estate has suffered damages.

WHEREFORE, Gordon requests the following relief:

    A. Judgment against Defendant, in the aggregate amount of the Transfers;

    B. Pre-judgment interest;

    C. Post-judgment interest;

    D. Costs allowable by law;

    E. Such additional relief as the Court deems just and proper.

Respectfully submitted,

CLARK HILL PLC

By:   /s/ Edward J. Hood
Edward J. Hood
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435
(313) 965-8300
ehood@clarkhill.com
*Attorneys for Robert D. Gordon, Receiver of the Estates of Legisi Marketing, Inc., et al.*

Date: March 29, 2012

7759977.1 30711/122570